**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JAIMIE L. CAIRNS**
Ruppert & Schaefer, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**DYLAN A. VIGH**
Law Office of Dylan A. Vigh, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NICOLE (MOONEY) THOMPSON, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 41A05-1201-DR-48 |
| | ) | |
| TERRY MOONEY, JR., | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE JOHNSON SUPERIOR COURT
The Honorable Cynthia S. Emkes, Judge
Cause No. 41D02-0909-DR-350

**August 9, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Nicole Thompson ("Mother") appeals the trial court's order regarding the custody of T.M., her child with Terry Mooney, Jr. ("Father"). We affirm.

**Issue**

Mother raises two issues, which we consolidate and restate as whether the trial court properly denied Mother's request to relocate to Kansas with T.M. and properly modified custody to Father.[1]

**Facts**

Mother and Father were married and had one child, T.M., born in January 2009. In September 2009, Father filed a petition for dissolution of his marriage to Mother. In November 2009, Mother filed a notice of intent to relocate to Kansas, where her family lives. In January 2010, the trial court denied Mother's motion to relocate but noted that the motion could be "addressed in more detail at the final hearing . . . ." Appellant's App. p. 4. The trial court ordered that if Mother wanted to renew her motion to relocate, she should do so in writing twenty days before the final hearing. In March 2010, Mother filed a second motion to relocate.

The trial court issued a partial decree of dissolution of marriage in September 2010. After an additional hearing, the trial court issued a supplemental decree of dissolution of marriage in March 2011. On the issue of custody of T.M., the trial court found:

---

[1] The exhibit binder contains confidential information in violation of Indiana Trial Rule 5(G). Neither party objected, and consequently, the parties waived the confidentiality of the documents. See Recker v. Review Bd. of Ind. Dep't of Workforce Development, 958 N.E.2d 1136, 1138 n. 4 (Ind. 2011).

[T]he Court finds and concludes it is in the best interest of the minor child for Mother to be granted sole legal and physical custody. The Court has considered the recommendations of the custody evaluator herein; however, the greater weight of the evidence at trial sustains the Court's decision herein. If the parties were able to civilly communicate with one another, the Court would have found a joint legal custodial arrangement more reasonable. At this time, the level of hostility between the parties causes the Court genuine concern about the well being of the child if he continues to witness the animosity between the parties. Father displays evidence of hostility, anger, bitterness, and vindictiveness in his dealings with Mother, for example, when he refuses to compromise with Mother on simple matters, makes decisions without regard to Mother's concerns, demeans Mother and her parenting abilities, and makes decisions in his best interest (without regard to the child's best interest) if said decision allows him to undermine Mother's rights or desires as a parent. Father admitted in his testimony that he and Mother can get along, but they refuse to. Father, however, fails to recognize and admit this role in the continued hostility between the parties.

Id. at 27. The trial court granted Father parenting time according to the Indiana Parenting Time Guidelines except that Father was granted extended parenting time overnight during his mid-week parenting time. When Father filed a motion to clarify whether Mother was allowed to move to Kansas, the trial court responded that it had granted Father 150 overnight parenting time credits and that it had counted alternating weekend overnights, the midweek overnights and extended summer parenting time to arrive at the 150 overnights, implying that it had denied Mother's relocation request. See Nov. 30, 2011 hearing Tr. ("Nov. Tr.") p. 94.

On June 6, 2011, Mother filed another notice of intent to relocate. In the notice, Mother stated that she intended to relocate to Missouri on July 1, 2011, because of a

3

workforce reduction at her employer's business in Indianapolis. According to Mother, her employer had another position available to her in Missouri. Father filed a response to Mother's notice, objecting to the relocation of T.M. to Missouri and asserting that the notice was untimely. After a hearing, the trial court granted Mother's request to relocate to Missouri. The trial court concluded that Mother's request was made "in good faith and for a legitimate reason" and that Father did not meet his burden of demonstrating that relocation was not in T.M.'s best interest. However, the trial court modified custody of T.M. to joint legal and physical custody between Mother and Father. The trial court noted that "the strong bond Father has with the minor child . . . should not be hindered by the relocation." Appellant's App. p. 41. The trial court ordered that Father have parenting time with T.M. for two weeks each month until T.M. started school and parenting time according to the Indiana Parenting Time Guidelines after T.M. starts school. Further, the trial court stated: "If Mother's employment situation changes, the Court may find the same grounds for a modification of custody, parenting time, support, or relocation." Id. at 42. This order was entered on June 30, 2011.

Mother moved to Missouri and started her new job on July 6, 2011. Mother had told her employer that she wanted to be in Kansas if employment was available there. On July 7, 2011, Mother's supervisor called her and said that a position would be opening in Kansas, but she did not have a start date for the position yet. Mother told her supervisor that she was interested in the position.

Mother was offered the position on August 3, 2011, she moved to Kansas on August 12, 2011, and she started her new job on August 15, 2011. On August 22, 2011,

4

Mother filed a notice of relocation, noting that she had moved to Kansas with T.M. Mother explained that her employer had lost a contract and was "laying everyone off" as of August 31, 2011. Id. at 44. Mother attached a letter dated August 10, 2011, from her employer, SofTec, regarding the layoff. Father objected to the relocation due to the increased distance from Indiana and alleged bad faith by Mother. The travel time would increase from six hours between Missouri and Indiana to ten to twelve hours between Kansas and Indiana. Father requested physical custody of T.M. in the event that Mother remained in Kansas.

After a hearing regarding the relocation, the trial court entered sua sponte findings of fact and conclusions thereon on January 4, 2012. The trial court found that Mother's relocation was not "in good faith or for a legitimate reason." Id. at 19. The trial court also found that relocation to Kansas was not in T.M.'s best interest because of the increased distance from Indiana, the increased travel time, Father's stability, Mother's instability in her employment and housing, and Mother's disregard for T.M.'s best interest and her poor judgment. The trial court denied Mother's request to relocate T.M. to Kansas and modified primary physical custody of T.M. to Father. The trial court granted Mother parenting time of three months per year until T.M. turns five and parenting time according to the Indiana Parenting Time Guidelines after that time. Mother now appeals.

**Analysis**

Mother argues that the trial court's order regarding custody of T.M. and her relocation to Kansas is clearly erroneous. The trial court here entered sua sponte findings

of fact and conclusions thereon. When the trial court enters findings sua sponte, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. Julie C. v. Andrew C., 924 N.E.2d 1249, 1255 (Ind. Ct. App. 2010). The specific findings will not be set aside unless they are clearly erroneous, and we will affirm the general judgment on any legal theory supported by the evidence. Id. A finding is clearly erroneous when there are no facts or inferences drawn therefrom that support it. Id. at 1255-56. In reviewing the trial court's findings, we neither reweigh the evidence nor judge the credibility of the witnesses. Id. at 1256. Rather, we consider only the evidence and reasonable inferences drawn therefrom that support the findings. Id.

Further, our supreme court has expressed a "preference for granting latitude and deference to our trial judges in family law matters." In re Marriage of Richardson, 622 N.E.2d 178, 178 (Ind. 1993). The rationale for this deference is that appellate courts "are in a poor position to look at a cold transcript of the record, and conclude that the trial judge . . . did not properly understand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did." Kirk v. Kirk, 770 N.E.2d 304, 307 (Ind. 2002).

Under the relocation statutes enacted in 2006, a relocating parent must file a notice of intent to relocate at least ninety days prior to the move and send a copy of the notice to any nonrelocating parent. Ind. Code § 31-17-2.2-1(a). A nonrelocating parent may object to relocation either by filing a motion to modify the custody order or by filing, within sixty days of receipt of the notice, a motion to prevent relocation of the child.

6

<u>Baxendale v. Raich</u>, 878 N.E.2d 1252, 1256 n.5 (Ind. 2008); <u>see</u> I.C. §§ 31-17-2.2-2(b) & 31-17-2.2-5. Upon request of either party, the trial court shall hold a full evidentiary hearing to grant or deny a motion to prevent relocation of the child. I.C. § 31-17-2.2-5(b). "The relocating individual has the burden of proof that the proposed relocation is made in good faith and for a legitimate reason." I.C. § 31-17-2.2-5(c). If the relocating parent meets that burden, "the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child." I.C. § 31-17-2.2-5(d).

In considering the proposed relocation, the trial court shall take into account the following factors:

> (1) The distance involved in the proposed change of residence.
>
> (2) The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.
>
> (3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.
>
> (4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.
>
> (5) The reasons provided by the:
>
> > (A) relocating individual for seeking relocation; and
> >
> > (B) nonrelocating parent for opposing the relocation of the child.

> (6)     Other factors affecting the best interest of the child.

I.C. § 31-17-2.2-1(b).   The "[o]ther factors affecting the best interest of the child" include, by implication, the factors set forth for custody determinations and modifications under Indiana Code Section 31-17-2-8.  Baxendale, 878 N.E.2d at 1257.  The trial court here found that Mother's reasons for relocation were not made in good faith and for a legitimate reason and that relocation was not in T.M.'s best interest.  Mother challenges both of those findings.

Mother had the burden of demonstrating that the relocation from Missouri to Kansas was made in good faith and for a legitimate reason.  See I.C. § 31-17-2.2-5(c). The trial court concluded that the relocation was not made in good faith or for a legitimate reason and made several findings in support of that determination.  Mother challenges four of these five findings.

The trial court first found:

> Mother had stable employment in Missouri and sought out employment in Kansas almost immediately upon her relocation to Missouri despite her testimony at the first relocation hearing (to Missouri) she would not seek relocation to Kansas.  At the first relocation hearing, Mother testified that she recognized a move to Kansas would be too far and she knew Father would object.  Mother specifically testified in the first relocation hearing the move to Missouri was not a stepping stone to a move to Kansas, when in fact, clearly it has proven to be just so.

Appellant's App. p. 19.

Mother argues that this finding is clearly erroneous because her employment in Missouri was not stable.  The trial court granted Mother permission to move to Missouri

8

with T.M. on June 30, 2011. Mother moved to Missouri and started her new job on July 6, 2011. Mother had previously informed her employer that she wanted to be in Kansas if employment was available there. On July 7, 2011, Mother's supervisor called her and said that a position would be opening in Kansas, but she did not have a start date for the position yet. Mother told her supervisor that she was interested in the position.

Mother was offered the job on August 3, 2011, moved to Kansas on August 12, 2011, and started her new job on August 15, 2011. On August 22, 2011, Mother filed a notice of relocation, noting that she had moved to Kansas with T.M. Mother noted the reason for the move as:

> I received an email from my current contractor last week. My contractor lost the contract with the government and is laying everyone off as off [sic] Aug. 31, 2011. The new contracting company is taking applications and I have already applied with them for the position in Manhattan, KS. SofTec was able to get me moved and I am supposed to start on Monday, August 15, 2011 in Kansas.

Id. at 44 (internal citations omitted). Mother attached a letter dated August 10, 2011, from her employer regarding the layoff. However, at the November 2011 hearing on the relocation, Mother testified that she did not lose her job in Missouri and that the job was still available. Given Mother's contradictory testimony regarding the status of the Missouri job and her acceptance of the Kansas job before she received the notice of the layoff, we cannot say the trial court's finding regarding the stability of her Missouri employment is clearly erroneous.

Mother also argues that the testimony mentioned by the trial court in the finding did not occur during the first relocation hearing. Our review reveals that the June 2011

9

transcript does not support the trial court's finding that Mother testified she would not seek relocation to Kansas, that Mother recognized a move to Kansas would be too far, that she knew Father would object, or that the move to Missouri was not a "stepping stone" to Kansas. However, during the first relocation hearing regarding Mother's move to Missouri, Father's attorney questioned Mother whether the relocation was an attempt to move closer to her parents in Kansas. Mother testified, "That's not a purpose of this move, but I will say it is a benefit, you know, I, I think it's incredible that a position would open that is six hours from Mr. Mooney and six hours from my parents. I mean that's just incredible." June 28, 2011 Tr. ("June Tr.") p. 13.

At the November 30, 2011 hearing, Father's counsel asked Mother the following:

> Q.    When we were in court last time do you remember me asking you on the record while you sat in that chair and I said, "You, you just want to get to Kansas, don't you? That's what you're trying to do, this is a stepping stone to get to Kansas", remember that question I asked you?
>
> A.    No, yes I do remember that question.
>
> Q.    Yeah, remember your answer?
>
> A.    I said, "No, I'm not trying to get to Kansas."

Nov. Tr. pp. 43-44. Although our review of the transcript of the June 2011 hearing does not reveal the testimony mentioned, Mother did not object. Further, Mother later testified that her goal had always been to move to Kansas and that she had never "hidden the fact" from the trial court that she wanted to be near her family. Id. at 55. Additionally, Mother did testify at the November hearing as follows:

> Q.    Has it always been your goal to get to Kansas?

10

A.    Yes.

Q.    Was Missouri kind of a stopping ground on the way to get to Kansas?

A.    I'd planned on being in Missouri maybe a year to two years, it just wasn't just, I mean, just was going to be based on finding employment or , you know, just based off life . . . .

Id. at 68.  Thus, although some of the trial court's findings regarding Mother's testimony from the June hearing are clearly erroneous, evidence was presented at the November hearing that the move to Missouri was in fact a stepping stone for Mother to move to Kansas despite the trial court's rejection of Mother's earlier request to relocate to Kansas.

The trial court's second finding regarding Mother's good faith and legitimate reasons for relocation was:

> Mother testified when questioned by Mr. Kassis that her job in Missouri started on July 6, on July 8, 2011 she became aware of an opening in Kansas because she had requested a transfer to Kansas if an opening was available, she moved to Kansas shortly thereafter, and she started her new job in Kansas on August 15, 2001 without notice to Father and without Court approval.  Mother specifically testified when questioned by Mr. Kassis that her job was still available in Missouri, but she "made the decision on her own to move because she really wanted to move."  When questioned by Ms. Schaefer, Mother changed her testimony and stated that she had heard a "rumor" that her job in Missouri might be in jeopardy so that caused her to move to Kansas.  Mother identified Exhibit "B" which outlined notice to her dated August 10, 2011 that her contract would be terminated.  Mother further testified that she most likely would have had additional contract work in Kansas [sic] despite the specific contract termination notice, but that she had already completed all transfer paperwork to transfer to Kansas.  The Court finds Mother's testimony that she moved because she wanted to is more credible than her testimony

11

that she moved due to employment termination or due to better employment options.

Appellant's App. pp. 19-20. Mother argues that this finding is clearly erroneous because she did not testify that she "made the decision on her own to move because she really wanted to move," that she provided a letter from her employer detailing the layoff, and that she did not change her testimony.

Mother testified at the November 2011 hearing that, when she was unable to contact her attorney or prior attorney in early August, she made the decision on her own to move to Kansas. She also testified that Kansas was where her "heart" really desired to be. Nov. Tr. p. 40. Although Mother did not make the exact statement described in the trial court's finding, she did make other statements that support the finding. As for the Missouri layoff and change in Mother's testimony, Mother is merely requesting that we reweigh the evidence and judge her credibility, which we cannot do. The trial court was presented with evidence that Mother expressed her interest in a position in Kansas shortly after moving to Missouri. Although she later formally learned that her Missouri job was in jeopardy, she had already accepted the Kansas position. Moreover, at the November 2011 hearing, Mother testified that her Missouri job was still available. Whether Mother moved because of rumors regarding her employment or simply because she wanted to live in Kansas was a matter of credibility for the trial court to determine. We cannot say that this finding is clearly erroneous.

Next, in discussing Mother's good faith and reasons for moving, the trial court found:

12

> The Court allowed Mother to relocated to Missouri about one (1) week before she sought out another move to Kansas with her employer, and about five (5) weeks before she moved to Kansas without the Court's approval. Mother's relocation under these facts shows a total disregard for Father's rights and the Court's authority.

Appellant's App. p. 20. Mother argues that this finding is clearly erroneous because she gave notice to the Court at the earliest possible date and the move to Kansas had no impact on Father or his visitation. The evidence demonstrated that, although Mother was aware in early July that the Kansas opening was a possibility, she did not seek approval from the trial court until she had already moved and started the job in mid-August. We cannot say that Mother gave notice to the trial court at the earliest possible time. As for an impact on Father, Mother moved to Kansas with T.M. without notifying Father and proposed a different parenting time arrangement, which clearly would have had an impact on Father. We cannot say that this finding is clearly erroneous.

Mother does not challenge the trial court's fourth finding, which provided:

> Father was granted joint legal and physical custody in the Court's Order dated June 30, 2011 after a lengthy, contested hearing. The Court allowed the move to Missouri, but changed physical custody to almost a 50/50 split stating, ". . . based on the relocation and the strong bond Father has with the child that should not be hindered by the relocation." Further in paragraph 11(e) of said Order the Court stated, "If Mother's employment situation changes, the Court may find the same grounds for a modification of custody, parenting time, support, or relocation." The Court was so concerned with Mother possibly relocating against and the effect the same would have on the Father-child relationship that the Court went to great lengths to advise Mother of the possible consequences of an additional move.

Id. at 20-21.

13

The trial court's final finding on Mother's good faith and legitimate reasons for moving follows:

> When asked by Mr. Kassis if she could have moved back to Indiana as opposed to Kansas when she moved from Missouri, Mother stated, "I could have, but what would be the point? My family and my support are not in Indiana they are in Kansas." Mother's own words demonstrate her failure to recognize the Father-child relationship is as important as the Mother-child relationship and should take priority over family support. Although the law allows the Court discretion to find a relocation for family support appropriate under certain facts, under the facts of this case, the Court does not find such. The Court finds there has always been a strong Father-child relationship, the child has always had support in Indiana with Father's family, and Mother has always had support in Kansas with her family. Mother's move appears to be more likely a gradual effort to distance herself and the minor child from Father.

Id. at 21.

Mother argues that this finding is clearly erroneous because her testimony regarding moving to Indiana was taken out of context. At the November 2011 hearing, Mother testified:

> Q. Okay, so you're telling the Court that you couldn't have found a job for ten dollars an hour in Indianapolis?
>
> A. If I'm going to be in Missouri and have a decision where, you know, I mean, I've already moved.
>
> Q. You already did, so we this [sic] to deal with, right? You've already done it.
>
> A. Well, I mean, I can find a job I guess making ten dollars an hour in Indianapolis, but I don't see what the point at all would be.

14

> Q.  You don't think it would [sic] a point if you leave your child close to his father so the child doesn't have to drive twenty hours a month in a car, you don't see a point in that?
>
> A.  I think there's better benefits have, being near my family, I think there's more support there.
>
> Q.  Cause that's what you wanted from the, from the beginning, right?
>
> A.  I want to have a relationship with my family.

Nov. Tr. pp. 54-55.  According to Mother, the trial court took her statements out of context because she was "questioning why she would relocate yet again when she already had employment with benefits."  Appellant's Br. p. 17.  The trial court's point in the finding is that Mother could have tried to find a comparable job in Indiana but that she places more value on her relationship with her family than on Father's relationship with T.M.  We cannot say that the trial court took Mother's comments out of context in this finding.

Mother also argues that this finding is clearly erroneous because the move was not an effort to distance herself and T.M. from Father.  Mother argues that it was not her intention to take T.M. away from Father.  Rather, it was her intention to care for her family.  The tension and discord between Mother and Father was well documented, and Mother's comments indicate that she placed more value on her relationship with her family than on Father's relationship with T.M.  Given the evidence, we cannot say that the trial court's finding is clearly erroneous.

In summary, except for the trial court's first finding, we cannot say that the trial court's findings are clearly erroneous.  We must "disregard any special finding that is not

15

proper or competent to be considered." In re B.J., 879 N.E.2d 7, 19 (Ind. Ct. App. 2008), trans. denied. "Additionally, such a finding cannot form the basis of a conclusion of law." Id. "We may reverse a trial court's judgment, however, only if its findings constitute prejudicial error." Id. "A finding of fact is not prejudicial to a party unless it directly supports a conclusion." Id.

The erroneous finding concerns Mother's testimony from the June hearing. The trial court erroneously found that Mother testified in June that she would not seek relocation to Kansas, that Mother recognized a move to Kansas would be too far, that she knew Father would object, or that the move to Missouri was not a stepping stone to Kansas. The erroneous finding would be cause for reversal if it were the "sole support for any conclusion of law necessary to sustain the judgment of the court." See id.

After examining the judgment, we conclude that the erroneous finding does not constitute the sole support for the trial court's conclusion that Mother failed to prove good faith and a legitimate reason for moving. The trial court's remaining findings, which are supported by evidence on the record, provide ample support for the trial court's conclusion that Mother failed to prove good faith and a legitimate reason for moving. In particular, the trial court found that Mother moved because she wanted to do so, not because of employment issues, that Mother moved without notice to Father or the trial court, that Mother had been warned by the trial court about further relocations, and that Mother failed to recognize the importance of T.M.'s relationship with Father. The erroneous finding was "merely harmless surplusage that did not prejudice Mother and, consequently, is not grounds for reversal." See id. The trial court's conclusion that

16

Mother's relocation was not made in good faith and for a legitimate reason is not clearly erroneous. Reaching a different result would require us to reweigh the evidence and judge the credibility of the witnesses. That is not within our purview.

Mother also argues that the trial court's findings regarding T.M.'s best interest are clearly erroneous. However, "[t]he relocating individual has the burden of proof that the proposed relocation is made in good faith and for a legitimate reason." I.C. § 31-17-2.2-5(c). If the relocating parent meets that burden, "the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child." I.C. § 31–17–2.2–5(d). Mother failed to demonstrate that the Kansas relocation was made in good faith and for a legitimate reason. Consequently, we need not address whether the proposed relocation was in T.M.'s best interest.

## Conclusion

The trial court's order denying Mother's relocation request and granting custody of T.M. to Father is not clearly erroneous. We affirm.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.

17